Duncan J.,
delivered the opinion of the Coart.
On the trial of this cause, exception was taken to the opinion of the Court, in receiving in evidence, drafts of a suryey found jn fog office of the surveyor of the district, purporting to be made for Daniel Weiss, under whom the plaintiff below, the defendant in error, claimed, on his warrant in the name of John Johnson, by John Hays, for the proper deputy, and a survey returned thereon, by the surveyor of the district, and a patent. The survey returned, stated, that it had been made by John Hays, for the proper deputy. The evidence of Hays’s authority was, that he had for many years, been in the habit of making surveys for the surveyor of this district, on warrants ; that he had no general deputation, nor had he any special order, to make this particular survey ; but that the surveys made by him, had been received by the surveyor of the district, and returned as official acts ; that in 1801, when this survey was made by him, William. Montgomery, was the district surveyor, for whom he did business as a surveyor, who received his surveys, and returned them. The surveys found in the office, the return, and the patent, were properly admitted; they were prima facie evidence. The recital in the patent, was evidence to go to the jury, not conclusive of the facts stated, of themselves, but after evidence given of the acts done by Hays, his employment under the surveyor of the district, the acceptance of his surveys generally, and the return of his surveys as official acts, rendered all these papers, proof of a regular survey; weakened by the long time which elapsed between the survey made, and the return to the deputy, and certainly in the case of an adverse warrant, followed up by a regular survey and return, without notice of the act done by Hays, liable to very serious objections.
After this evidence was received,. and all the evidence of title by the plaintiff and defendants, the cause lay in a very narrow compass. Instead of this, we find it branched out into sixteen heads of enquiry, or questions, or interrogatories put to the Court. Nests of questions, each contained within the others, may thus be multiplied without end, delaying the business of the county, perplexing the Court, and confounding the jury. I do not use this observation, with an allusion particularly to this case, or to the practice of any *139 individual of the bar, but to the general course which all appear now to pursue ; not I presume, with any intention to defeat justice, but each following the precedents set before him. It is the duty of the Court to answer all pertinent questions; it is as much error to shun this, as to answer erroneously; but it does not follow, that the Court are to be put to a cross examination, led along the whole alphabet of the law, and seriously called on to answer the simplest questions ; as here, “ that in point of law, if the plaintiff has not a legal or equitable title to the land in question, the verdict should be for the defendants ;” thus calling on the Court, to instruct the jury, that two and two, make four, in a Court of justice, as they do every where else. The only questions, were on the authority to make the survey; its adoption in the land office; the relation of landlord and tenant, between Burd the younger, and Seabold; the acts done by Burd the elder, in ascertaining his boundary by actual survey ; the recognition of lines; the knowledge of the sale, made by his son-in-law Johnson, to Weiss; his witnessing the conversation, and concealing his right. In all but the first, the law is stated correctly, for all those acts ought to postpone Burd the elder; and with respect to the tenancy, if the jury believed that Burd the younger, came in under Weiss or Sea-bold, or held the land as the tenant, on> that ground alone, the verdict ought to have been for the plaintiff. But there is a broad principle, as well in the charge, as in the answer of the Court to the fourth question, which is clearly erroneous, and might tend to mislead the jury; however qualified it might be, in the answer to the other questions. The Court say, the plaintiff’s survey was legalised by return, acceptance, and patent, as between him and the Commonwealth. In the first place, this does not meet the question, which was, that “ unless the plaintiff, or those under whom he claimed, had a legal survey, the patent was invalid; and that the return and patent on Hays's survey, if the land office was deceived or unacquainted with the manner in which it was obtained, would not render it legally valid.” The question of a survey made by one not authorised to make it, receiving a confirmation by acceptance and patent, is a question of general importance, and of some difficulty; but if such survey, by its adoption in the land office, by warrant of acceptance and patent, will acquire validity, it ought to be *140 knowingly adopted. Certainly if such adoption and ratifica» tion were fraudulently obtained, the officers deceived in their act, it would not render it valid; but the Court give not any decided opinion, what would be the effect of a patent, obtained by fraud, surprise, or misinformation ; for never in the case of a proprietary warrant, executed before the revolution, a warrant directed to one surveyor, could be executed by another, unless done by his authority. The act would be ineffectual. The proprietaries might bind themselves, but the departure from the rules of office, must be shewn to be intentional, by some strong proof, otherwise the transaction would give cause of suspicion of unfair practice, and the proprietary officers could not, by such unusual procedure, divest or affect the interests of grantees, claiming under prior rights, who paid their money on the faith of such contracts. Nicholas’s Lessee v. Holliday, 2 Sm. L. 155. Surveys, without the usual and proper authority, could confer no right, but a long usage would sanction such acts ; as in the surveys, made by Geni. Armstrong, without office right, but who was authorised by the proprietaries to receive money, and make surveys. Lessee of Woods v. Galbreath, and Turbett’s Lessee v. Vance, 2 Sm. L. 157, 8. If this be so, under the regulations of the proprietaries, who being the owners of the soil, had the power to grant their lands in any manner they pleased, so as not to affect the vested rights of others, acquired in the usual and common form, how much stronger would the rule be, where the officers of the land office are public agents, entrusted with the power of granting lánd in the name of the Commonwealth, not absolutely, but under the terms and conditions prescribed by law, of which conditions, every man is bound to take notice ? Bixler v. Baker, 4 Binn. 219. The patent does not conclude the State, on a false statement of facts ; every citizen interested in the land, may contest the validity of the grant. Attorney General v. Grantees, 4 Dall. 237. So here, if the survey was made without the authority of the surveyor of the district, William Montgomery, the act of his successor could not give it validity ; nor would a patent, obtained by deceit or misrepresentation, conclude any one affected by it, from contesting it. But the evidence of Hays’s authority, is persuasive and convincing; without any general written deputation, or special order to make this survey, because he acted not in this case *141 alone, but in many others, as the agent of the surveyor, whose surveys, are without objection received, and acted upon as official acts, not as a special agent only, requiring a speciai order for each particular survey, and to consider John Hays, other than as the agent of William, Montgomery, would be deceiving the public, holding out false colours, to the injury of those, who, confiding in his actual employment as a deputy, placed'the warrant in his hands for execution 5 and if it had been so left to the jury, all would have been right; but the opinion went much further, for it is to be inferred from it, that the Court laid down the law, that though the survey be made with or without authority, the patent obtained by deception or otherwise, it ratified all, and placed it beyond objection; the patent, although obtained in ignorance of the facts, by misrepresentation, deceit, or forgery, legalised an unauthorised survey, and gave the effect of an official act, to that which was unauthorised and unofficial. The law is not so, and for this reason alone, the judgment is reversed, find a venire facias de novo awarded.
Judgment reversed, and a venirefacim de'novo awarded.