# CASES

## IN

# THE SUPREME COURT

### OF

## PENNSYLVANIA.

JOHN SMAY *against* CHARLES SMITH and BENJAMIN R. MORGAN, Executors of WILLIAM SMITH, D. D.

#### IN ERROR.

When it can be proved or is admitted that a man acted as an assistant surveyor, it is not requisite to shew a special authority.

General reputation that a person was employed as such, or proof that many drafts or field notes remaining in the Surveyor's office are in his hand writing, are evidence that he was an assistant.

The return by a deputy surveyor of a survey made by another, is a ratification of it, and it is immaterial whether there was a precedent authority to make it or not.

An ejectment may, in some cases be supported on a warrant without a survey.

In ejectment to recover a tract of land, where reference is made in a deposition to lines run and surveys made, and a draft is annexed, which does not embrace all those lines and surveys, but only those of the tract in dispute, it will be sufficient, if the defendant was present to cross examine, and did not ask for any other or further draft.

ERROR to the court of common pleas of Cambria county.

This was an ejectment brought in the court below by the executors of Dr. *Smith* to recover from *John Smay*, the defendant, part of a tract of two hundred acres of land in Cambria county. To support their claim, the plaintiffs gave in evidence,

1st. A warrant to *William Smith*, D. D. dated 7th April, 1792, for one hundred acres near the 13th mile tree on the road from Frankstown, including the Dollar Camp.

2d. A warrant to *Rebecca Blodget*, (a daughter of Dr. *Smith*,) dated 21st December, 1792, for three hundred acres adjoining lands, warranted to *William Smith*, D. D. at a place called the Dollar Camp.

The plaintiffs then offered the deposition of *Thomas Vickroy*, which went to shew, that in 1794 he went and saw the outlines of the survey, as made by *William O'Keefe*, deputy surveyor, in 1808, and many other surveys for Dr. *Smith*, as run by *P. Cassidy*. That *Vickroy* himself at the instance of Dr. *Smith*, at different times run the division lines, and particularly run and marked all the lines of the said survey of *O'Keefe*, (a draft of which, shewing the courses and distances and corners he annexed to his deposition,) that hav-

(John Smay *v.* Charles Smith and Benjamin R. Morgan, Executors of William Smith, D. D.

ing completed all the work, he in 1808, gave his field notes and draft to Mr. *O'Keefe,* who returned the surveys for Dr. *Smith.* That the said survey included the thirteenth mile tree on a road from Frankstown to Conemaugh, and the Dollar Camp, a place so called, and well known.

A cross examination of the deponent was attached to the deposition. The defendant objected to its admission. That it was not proved that *P. Cassidy* was an assistant of *G. Woods* the deputy surveyor. That it was not proved that *Thomas Vickroy* was an assistant of *G. Woods.* That he was not an assistant of *O'Keefe.* That the land was not in *G. Woods'* district. That *Vickroy* did not return with his deposition a draft of all the work done by *P. Cassidy* and himself. And that if *Vickroy* had no authority to make the survey it was useless to prove the existence of the lines on the ground. Which objections were overruled by the court, and a bill of exceptions sealed.

Other witnesses were then produced on the part of plaintiffs, who proved that they had examined the lines on the ground, and found the survey accurately made, and the defendant living within it.

The plaintiff then offered a certified copy of the survey by *William O'Keefe.*

To which it was objected, that the certificate at the foot of the draft returned, stated the above to be a copy of a survey made in 1794, by *G. Woods,* &c. and examined and resurveyed in 1808, by *William O'Keefe,* deputy surveyor—and that part of the certificate which states what *G. Woods* did, is no evidence of the fact; and in support of their objection produced a witness who swore, that he had seen and conversed with *William O'Keefe,* on the morning of the trial, and that he lived within a mile and a quarter of the town. Whereupon the court rejected the draft. The plaintiffs, after giving in evidence the will of Dr. *Smith,* dated 10th July, 1802, rested.

The defendant produced no other testimony than to show that the " Dollar Camp," was without the lines claimed by the plaintiffs, and relied on the defectiveness of the defendant's title to prevent a recovery.

The opinion of the court was reduced to writing, and filed of record.

*White,* for plaintiff in error, contended,

1st. That the deposition of *Vickroy* was erroneously admitted, because it referred to a draft which had been in his possession, and did not account for the loss of it; and although he did swear the copy annexed was true, that that was not sufficient. *Lessee of Packer* v. *Gonsolees,* 1 *Serg. & Rawle,* 526. 13 *Serg. & Rawle,* 113.

2d. That the warrant to Dr. *Smith* is but descriptive to a common intent, and the title would only attach from the actual survey, but if it were descriptive, the holder is postponed by laches. *Hunter's Lessee* v. *Meason, et al,* 4 *Yeates,* 108. 3 *Yeates,* 25. 7 *Serg. & Rawle,* 185. 191. 4 *Bin,* 58. 3 *Yeates,* 283. 2 *Yeates,* 148.

(John Smay *v.* Charles Smith, and Benjamin R. Morgan, Executors of William Smith, D. D.)

3d. As the plaintiffs have no official survey they cannot recover. 2 *Yeates*, 148. 3 *Bin.* 103.

4th. That the defendant could not be affected with notice unless there was an official survey. An illegal survey is not notice. 7 *Serg. & Rawle*, 191. 2 *Bin.* 105—7. *Smith's Ex'r v. Keehan, MS. case.*

*Smith*, for defendant in error.

The warrants were descriptive, as appears by the finding of the jury—they had both been placed in the hands of *P. Cassidy*, an assistant of the deputy surveyor, *Thomas Vickroy* also had run lines, and made a draft, which he gave to *O'Keefe*, the deputy surveyor, who returned the survey into the office.

The opinion of the court was delivered by

HUSTON, J.—The executors of Dr. *Smith*, who were plaintiffs in the common pleas, claimed the land in question on two warrants unsurveyed and returned into the office of the Surveyor General. One in the name of Dr. *Smith*, dated the 7th April, 1792, for one hundred acres of land near the the thirteenth mile tree, on the road from Frankstown, including the "Dollar Camp;" another in the name of *Rebecca Blodget*, (a daughter of Dr. *Smith*,) dated the 21st of December. 1792, for three hundred acres, adjoining land warranted to *William Smith*, D. D. at a place called the "Dollar Camp." After giving in evidence these two warrants, the plaintiff offered the deposition of *Thomas Vickroy*, which was received and exception taken, then the testimony of *S. Lloyd*, which was admitted, and then the return of the survey by *William O'Keefe*, deputy surveyor, under seal of office, which was rejected, because as was agreed here, the certificate at the foot of the draft returned, stated the above to be a copy of a survey, made in 1794, by *G. Woods*, &c. and examined and surveyed by *William O'Keefe*, deputy surveyor, in 1808, and that the part of the certificate which states what *G. Woods* had done, was no evidence of the fact stated. Be it so—it was still evidence of what was done by the deputy surveyor who returned it, and should have been received as evidence of a survey in 1809—this being rejected the defendant gave no evidence—it had been proved he was in possession, and the court charged the jury that they might find for the plaintiff; they did so, and *Smay* has brought this writ of error.

There is in the objections an over acuteness, not usual in our courts, and which I shall proceed to state.

*Vickroy's* deposition proved that in 1794, he went and saw the outlines of the survey in question, and many other surveys for Dr. *Smith*, as run by *P. Cassidy*. That *Vickroy* himself, at the instance of Dr. *Smith*, at different times run the division lines, and particularly run and marked all the lines of the surveys in question, (a draft of which, shewing the courses, distances and corners, he annexed to his deposition,) that having completed all the work, he

(John Smay *v.* Charles Smith and Benjamin R. Morgan, Executors of William Smith, D. D.)

in 1808 gave his field notes and drafts to Mr. *O'Keefe*, who returned the surveys. *Lloyd* and others proved that shortly before the trial they examined the lines on the ground, and found the survey accurately made, and the defendant living within it. *Vickroy* and others proved the thirteenth mile tree on a road from Frankstown to Conemaugh, and the "Dollar Camp," a place so called and well known, to be included in the plaintiff's survey. There was a cross examination at the time of taking the deposition. The objections to it were, that it was not proved that *P. Cassidy* was an assistant of *G. Woods*. That it was not proved that *Thomas Vickroy*, the witness, was an assistant of *G. Woods*. That he was not an assistant of *O'Keefe's*. That the land was not in *O'Keefe's* district. And that *Vickroy* did not return with his deposition a draft of all the work done by *P. Cassidy* and himself. And next that if *Vickroy* had no authority to make the survey, it was useless to prove the existence of the lines on the ground, by *Lloyd* and others.

There is a rule of evidence that a party shall produce the best evidence which the case admits of. In practice, however, there are very many exceptions. Where a deed is acknowledged, or a deposition taken before a man who states himself to be a justice of the peace, the deed is recorded, or read in court, and so is a deposition, though we have not the best evidence, or any evidence that the man who certified it was a justice of the peace. Copies of the returns of surveys under seal for the Surveyor General's office, are and have been received, and the commission of the deputy surveyor who made them is not asked for, any more than the justices of the peace above stated. The boundaries of a surveyor's district are also taken from report, as well as the fact of his being a deputy surveyor, if either is contested, notice is given before the trial, or the party contesting the authority, comes with a copy of the commission to some other person, and with proof that the land was actually out of the district. So the commission of a sheriff, or proof that the writ was executed within his county is not required—if denied, the truth may be enquired into. The sheriff and deputy surveyor generally have assistants, and the authority to the deputy sheriff, or assistant to the surveyor, is scarcely ever in writing, I will say never where the person is generally employed. If a man who has never been engaged to make a survey for the officer, is wanted to make a single survey, he may be requested in writing. In some instances there are several persons who act as assistants to the deputy surveyor, and when they continue to act in that capacity for a long time, this is as generally known as it is known who is the deputy surveyor of the county.

Where it can be proved or is admitted that a man acted as an assistant surveyor, and the survey is returned, as was the case here, it never was required to prove a special authority to do that act. General reputation that a man acted as an assistant to a former

deputy surveyor, or proof that many drafts or field notes remaining in the office are in the hand-writing of a particular man, are evidence that he was an assistant. In 7 *Serg. & Rawle,* 317, the law is not laid down, but rather what has been the usage on this subject: and see 6 *Serg. & Rawle,* 137. Perhaps every man in that court house knew that *G. Woods* was the deputy surveyor of Bedford county, in 1792, and that the present county of Cambria was a part of that county in the same year. It was as well known thirty years ago that *Cassidy* and *Vickroy* had been assistants of *G. Woods,* as that *G. Woods* had been deputy surveyor of Bedford county. If *Vickroy* had said in his deposition that he and *Cassidy* had been assistants to *G. Woods,* it would have been legal evidence of it; so if any person in the court had proved that they were known and reputed as such. Palpably the deposition was taken without a question on this subject, because it was supposed to be too well known to be denied. If it had been necessary in the cause I would have directed the jury that they might fairly infer it from the testimony given. *Vickroy* also proved that he gave to *O'Keefe* the drafts, &c. from which the return was made—now the fact that *O'Keefe* returned a survey made by *Vickroy,* or any other person, was a ratification of it, and after this, it was totally immaterial whether there was a precedent authority to make it or not. There was then, unless contradicted, and if believed, evidence of the survey being legally made.

It would then seem unnecessary to discuss the point whether in any case or in this case, an ejectment can be supported on a warrant without a survey. Clearly there are cases where a man may bring an ejectment on a warrant without any survey of the same land, each a warrant of his own: the deputy surveyor makes the survey for one, the other enters a caveat, the board of property decides, as the deputy surveyor did, the other is not without his redress he may bring his ejectment, and recover the whole or a part of the land which is in dispute; the fifth section of the limitation act, of the 26th of March, 1785, in fact supposes an ejectment on a warrant on which no survey has been made. There was a radical mistake in rejecting the return of survey by *O'Keefe,* but this was in favour of the party who has taken the writ of error, he, however, says that prevented him from going into a full defence; be it so, we must take it as it appears to us. There was another objection namely, that *Vickroy* in his deposition spoke of lines run and surveys made by *Cassidy* and himself, and did not annex a draft of these lines or surveys, but he annexed a draft of the tract in question. It did not appear, nor is it alleged that any other part of the work was material—besides having closed his testimony, and annexed his draft, the defendant cross examined the deponent and did not ask for any other or further draft.

Judgment affirmed.