## MARTIN v. HUGHES et al.

(Circuit Court of Appeals, Third Circuit. November 14, 1898.)

### No. 9.

1. EVIDENCE—BOUNDARY—DECLARATIONS OF DECEASED SURVEYOR.

The declarations of a deceased surveyor, unless made on the ground in controversy, are not admissible to establish a boundary in Pennsylvania, though made in court under oath in an action between different parties.

2. BOUNDARIES—SURVEY—RETURN BY SUCCESSOR IN OFFICE.

A warrant for land was issued by the commonwealth in 1794, and a survey was made thereunder in the same year by a deputy surveyor, who died without having made his return. In 1808 his successor in office made return of the survey made by his predecessor as authorized by law, and a patent was issued thereon, under which the land has been held since that time. Held, that after such lapse of time the return was not open to question, and the marks of the survey of 1794, if they could be identified on the ground, controlled as to the location of the tract, and could not be displaced by marks of a survey made in 1808, on the theory, unsupported by other evidence, that the surveyor making the return based it upon a new survey made by himself.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

This was an action in ejectment by John C. Martin against Charles A. Hughes and others. There was a judgment for defendants, from which the plaintiff brings error.

C. Heydrick, for plaintiff in error.

M. D. Kittell, for defendants in error.

Before ACHESON and DALLAS, Circuit Judges, and BUTLER, District Judge.

BUTLER, District Judge. The plaintiff brought ejectment under a title from the commonwealth, in pursuance of a warrant issued to Isaac Brennan. March 25, 1794, a survey thereunder by Deputy Surveyor George Woods, a return of this survey by his successor in office, in 1808, and a patent based thereon soon after. Three other warrants were issued contemporaneously with Brennan's, one of them to Richard Smith, another to William Smith and a third to John Nicholson, for lands in the same locality, and surveys made in pursuance of them by Woods contemporaneously with the survey for Brennan. Woods dying without having made returns of these surveys, they were made by his successor in office, William O'Keefe, in June, 1808; and patents were issued accordingly. The return on William Smith's warrant calls for a beech tree as its northwestern corner; a line running thence north; a road crossing that line obliquely at a distance of 30 rods from the corner; and a line running north and west from its northwest corner. The return on the Nicholson warrant calls for land of William Smith on the east; a cedar tree near a beech, as its northeast corner; lines running thence north, east and west; the "state road" crossing this line, running north in the same oblique direction shown on the return of the William Smith survey, at a distance of 30 rods from the corner; for Isaac Brennan's land on the north; and extending 30 rods west of Nicholson's northwestern corner. The calls of the return on the Isaac Brennan warrant reciprocate calls of the other returns, specifying a cedar tree as its southeastern corner; John Nicholson as an adjoiner on the south, declaring that the survey starts at the cedar and extends west 30 yards less than the length of its southern line; and that lines run from the cedar north and south, and so on.

The defendants claim under a title from the commonwealth in pursuance of a warrant issued to James Duncan in March, 1794, and a survey made thereunder in 1853.

The question involved in the suit is: Where was the controverted line of the Brennan survey located? The plaintiff claims that it started in a northerly direction at the cedar near a beech, as described in the return, and located by his testimony; while the defendants claim that it started at a point called "the cedar stump" or "big cedar," about 40 yards westward, where marks are found, made in 1808. Each of these claims is supported by testimony, and under the instruction of the court a verdict was rendered for the defendants. The plaintiff complains of this instruction, and also of the rejection of certain testimony. The specifications of error are as follows:

The learned court erred below:

(1) In overruling the plaintiff's offer of the testimony of William Griffith, a surveyor, then deceased, delivered upon the trial of a certain cause in the court of common pleas of Cambria county, Pennsylvania, in the year 1835, in which David Smay, through whom the defendant below deduced title to part of the Duncan tract. Record 17–23, was plaintiff, and the plaintiff below was defendant, to the effect that in or about the year 1835, he made a survey of the John Nicholson tract, in doing which, he found at the point claimed by the plaintiff (below) as the common corner of the Brennan, Nicholson and Smith tracts a

cedar tree and a beech tree, each marked on four sides as a corner, standing just so far apart that he could stand between them; that the cedar stood to the southwest of the beech and that he could set his compass between the trees and turn it upon any one of the four lines and see marks on any one of the four lines around it; that subsequently the beech tree was blocked and showed marks of 1794 and 1808, and that there was an old, well-marked line running north and south from the cedar and beech; and that in 1835 the corner marks on the cedar were apparently old; the same having been reduced to writing by the official reporter of the court, and being offered, first, as a deposition, and, second, as the declaration of a deceased surveyor, and rejected upon each offer. Record, 87–8.

(2) In its answer to the plaintiff's second point, which point was as follows: "It appears by the official return that the Isaac Brennan tract was surveyed by George Woods, Jr., in June, 1794, and therefore if marks made upon the ground by the surveyor in locating the Isaac Brennan tract have at any time been found and their position identified, they must control the location of the tract;" and was answered as follows: "This point is affirmed if the jury find that George Woods, deputy surveyor, surveyed the land as stated and his survey was adopted and returned by William O'Keefe, his successor in office," Record, 88; and in not unqualifiedly affirming the point.

(3) In its answer to the plaintiff's fifth point, which point was as follows: "If the jury believe from all the evidence that three tracts of land mentioned in the preceding point (namely the Smith, Nicholson and Brennan) have a common corner, that would fix the eastern side of the Isaac Brennan, and the same could not be changed by the subsequent survey made of the James Duncan in 1853;" and was answered as follows: "We have already explained that to you, that if the true line of the Isaac Brennan was as claimed for by the plaintiff in this case, and the survey was made at the early date claimed, that the subsequent survey of the James Duncan tract in 1853 overlapping the Isaac Brennan must give way to the older survey." Record, 89.

(4) In charging the jury as follows: "Now these surveys (namely of the Brennan, Smith and Nicholson tracts) if they were made by George Woods upon the ground, William O'Keefe, the deputy surveyor, or who seems to have been his successor, had a right to return, and so far as the effect of the surveys is concerned, the act of the deputy in surveying them was the act of the principal, or George Woods, if he made the prior survey. * * * On the face of the papers [the returns of surveys of the Brennan, Smith and Nicholson tracts], the inquiry will naturally arise to you: If these surveys, if these are returns of surveys made by George Woods in 1794, and if those surveys were made in the month of June, and presumably at the same time—if those be returns of his survey, did George Woods mean the same corner by these three different designations, if they are different, namely, one a beech, one a cedar and one a cedar near a beech." Record, 91.

(5) In its answer to the defendants' second point, which point was as follows: "The plaintiff to make out his case having given in evidence the return of survey made by William O'Keefe in 1808, and a patent founded on that return, he is concluded by the boundaries therein set out and as found upon the ground;" and was answered as follows: "Affirmed."

(6) In its answer to the defendants' third point, which point was as follows: "There is no evidence of any return of survey on warrant to Isaac Brennan earlier that the O'Keefe return in 1808, and the location therein set out by its metes and bounds, is the true location of the Isaac Brennan tract;" and was answered as follows: "In answer to this we may say: The return in question is the only one, and is evidence of the true location of the tract. As thus stated the point is affirmed; that is, it is evidence of the true location of the tract, and is to be considered as we have stated to you in connection with the marks you find upon the ground."

The first specification is not sustained. The declarations of the deceased surveyor were not competent evidence. Under the laws of this state such declarations, made on the ground in controversy, may be received after the surveyor's death. Whart. Ev. § 191; Kramer v. Goodlander, 98 Pa. St. 366; Moul v. Hartman, 104 Pa. St. 43. The declara-

tions offered were not so made; and they were not, therefore, admissible. That they were made in court under oath, is unimportant. That they were not admissible as a "deposition" of the surveyor (as at first contended) is now admitted,—the defendants not having been parties nor privies to that suit.

The other specifications, which relate to the charge, must be sustained. The plaintiff's and defendants' second points define their respective contentions in the case. The plaintiff's point is:

"It appears by the official return that the Isaac Brennan tract was surveyed by George Woods in 1794; and therefore if marks made on the ground by the surveyor [Woods] in locating the tract, have been found, and their position identified, they must control the location of the tract."

The defendants' point is:

"The plaintiff, to make out a case, having given in evidence the return of survey made by William O'Keefe in 1808, and a patent founded on that return, he is concluded by the boundaries therein set out, as found on the ground."

The survey named in the latter point must, in the light of the defendants' attitude throughout the case, be understood as O'Keefe's. It was so understood by the court, otherwise it could not have been affirmed while the plaintiff's was, virtually, denied. If not so understood the points are harmonious. It thus appears that the plaintiff stands on a survey by Woods, described and marked by him; while the defendants stand, substantially at least, on one made by O'Keefe, with lines marked by him in 1808, though returned as Woods. The plaintiff's point should have been affirmed, without qualification, and the defendants' denied. The court affirmed the latter, thus instructing the jury (especially when the answer to the plaintiff's point is considered) that the return made by O'Keefe was of a survey run by himself, or that the jury might find it to be so, and that the plaintiff is concluded by the lines he established; and virtually denied the plaintiff's point, by saying, "It is affirmed if the jury find that Woods surveyed the land and his survey was adopted and returned by O'Keefe." The jury should not have been allowed to find that Woods did not make a survey, or if he did that O'Keefe might disregard it, and make another. The records of the land office show that Woods, and he alone, made the survey; and after the great lapse of time during which the land has been held under a patent issued thereon, the record must be treated as conclusive. Drinker v. Holliday, 2 Yeates, 87–89; Porter v. Ferguson, 3 Yeates, 60; Norris v. Hamilton, 7 Watts, 91–97. Indeed there is no evidence to the contrary—unless it be an inference from the marks of 1808; and who made these, and for what purpose, does not appear, except by conjecture. The only question for the jury was: Where are the lines of that survey? If O'Keefe ran and marked others in 1808, they are unimportant. Woods having exhausted the power conferred by the warrant, in this respect, O'Keefe's duty was confined to returning Woods' survey, as ascertained by examination of the record which the law required Woods to keep; and this is what his return shows he did. The case of Smay v. Smith, 1 Pen. & W. 1, cited by the defendants, is not inconsistent with this view; the facts and the questions there were different. As before stated the court's affirmance of the defendants' second point, and qualification of the plaintiff's, was a

virtual instruction that the jury might find that Woods did not survey the tract, and if it found he did, might also find that O'Keefe did not adopt this survey, but made another, which he returned. This error runs throughout the charge, and is the substance of all the complaints made of it (except the sixth, which is immaterial) and justifies them.

The judgment is therefore reversed.