MARTIN v. HUGHES et al.

(Circuit Court of Appeals, Third Circuit. December 5, 1899.)

No. 36.

1. BOUNDARY—EVIDENCE TO LOCATE SURVEY.

Under the settled law of Pennsylvania, which permits a surveyor, after the survey of a warrant, while it remains in his hands unreturned, to change the survey with the consent of the warrantee, when the change does not interfere with mesne rights, where warrants returned in 1808 showed the survey thereof to have been made in 1794, on an issue as to the location of one of the lines of such survey, it is competent to show that in 1808, before the return of the survey, the owner of the warrants directed the deputy surveyor, in whose hands they had remained, to "complete the survey," and have return thereof made, and that the surveyor did work upon the ground in compliance with such directions; and, in the absence of proof definitely fixing the line as run in 1794, marks shown to have been made in 1808 may properly be considered by the jury in determining the true location of such line.

2. SAME—PLAT MADE BY SURVEYOR.

A plat shown to be in the handwriting of a deputy surveyor, and to have been made while he was acting as agent for the owners of warrants which were then in his hands, and which he had assisted in surveying, purporting to show the location of such surveys, is admissible in evidence on the question of the boundary of one of the tracts covered by such survey.

3. TRIAL—INSTRUCTIONS—COMMENT ON EVIDENCE.

Where all questions of fact are submitted by proper instructions to the ultimate determination of the jury, it is within the discretion of the trial judge, under the federal practice, to express his opinion upon the facts in his charge whenever he thinks it necessary to assist the jury in reaching a just conclusion.

4. SAME..

It is not error for a judge in his charge to the jury to state that the action of a former owner of land in pointing out a line as its boundary and in making a deed conveying it by reference to such boundary constitutes "strong evidence" of the true boundary against a party who claims through such deed.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

C. Heydrick and A. O. Furst, for plaintiff in error.

Thos. H. Murray, for defendants in error.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. John C. Martin, the plaintiff below and in error, brought this action of ejectment on August 31, 1894,

against Charles A. Hughes and others, to recover a piece of land 44 perches in width and 273 perches in length, containing about 75 acres, situate in the county of Cambria, and state of Pennsylvania. The plaintiff claimed under a warrant of survey granted on March 25, 1794, to Isaac Brannan, and a return of survey thereunder into the land office on November 28, 1808. The certificate to the returned plot of this survey reads thus:

"Situate on the headwaters of Little Conemaugh, in the township and county of Cambria, and surveyed the ———— day of June, 1794, by George Woods, Jun., deputy surveyor, in pursuance of a warrant dated the 25th day of March, 1794. Examined the 23rd day of June, 1808. William O'Keeffe, D. S."

The defendants claimed under a warrant of survey granted on March 25, 1794, to James Duncan, and a survey thereunder, made on January 4, 1853. These two tracts of land—the Brannan and the Duncan—are contiguous, and this controversy concerns the boundary between them. The case turns upon the question of the location of the eastern line of the Brannan tract. The Brannan survey calls for a "cedar" at its southeast corner, and the eastern line of the survey runs north from the cedar. The parties differed as to the position of this Brannan cedar, their respective locations claimed for it being about 44 perches apart in an east and west line, the plaintiff claiming the more eastern of these locations. There was evidence tending to show that formerly two cedar trees, now decayed stumps, stood in an east and west line about 44 perches apart, each bearing corner marks of an unknown age on its north, east, south, and west sides; that at a point 1.6 rods north of the more western of these two cedar stumps there stood until lately a beech tree, marked in 1808 as a north and south line tree; and that at a point between 3 and 4 feet northeast of the more eastern of the two cedar stumps there stood until recently a beech tree bearing on its west side a mark of 1794, and marks of 1808 on its west, south, and east sides, but bearing no mark whatever on its north side. This beech tree is the northwest corner of a tract of land surveyed on a warrant granted on December 21, 1792, to William Smith, D. D., and returned into the land office on November 28, 1808, the certificate to the plot of survey stating:

"And surveyed the ———— day of June, 1794, by George Woods, Jr., deputy surveyor, in pursuance of a warrant dated the 21st day of December, 1792. Examined the 24th day of June, 1808. William O'Keeffe, D. S."

This Smith survey calls for a beech at its northwest corner. The plaintiff claimed that the southeast corner of the Brannan and the northwest corner of the Smith were located at the same point, and that the two named tracts and a third tract, designated in this record as the "John Nicholson," have a common corner there. The last-mentioned tract was surveyed on a warrant granted on December 21, 1792, to John Nicholson, and returned into the land office on June 26, 1811, the certificate thereto stating:

"Surveyed the ———— day of June, 1794, by George Woods, Jr., D. surveyor, in pursuance of a warrant dated December 21st, 1792, and examined the 6th day of June, 1811, by William O'Keeffe, D. S."

The Nicholson survey calls for "cedar near a beech" at its northeast corner. The parties respectively claimed their location by virtue of actual work on the ground, alleged to have been authoritatively made, for the purpose of location, before return of survey into the land office.

The case, as presented to this court by the present record, is materially different from what it was when here upon a former writ of error. Martin v. Hughes, 33 C. C. A. 198, 90 Fed. 632. Then there was no evidence whatever connecting the owners of the warrants with any survey or resurvey made in 1808, nor did it appear by whom the marks of 1808 were made, or for what purpose. Upon the retrial of the case the defendants offered and the court admitted (we think, rightfully) documentary evidence tending to show that in 1794 William Smith, D. D., and John Nicholson owned in partnership 49 warrants of survey, including the Isaac Brannan, William Smith, D. D., James Duncan, and John Nicholson warrants, already mentioned, all of which 49 warrants were put into the hands of George Woods, Jr., deputy surveyor, and were located in Cambria county, on the headwaters of the Conemaugh; that Thomas Vickroy, a surveyor, was an assistant to Woods, the deputy surveyor, in 1794, and assisted in the field work which was done in that year under the said 49 warrants; that William O'Keeffe was the successor to George Woods, Jr., in the office of deputy surveyor; that on August 10, 1800, William Smith, D. D., addressed a letter to Thomas Vickroy, requesting his attendance at Lancaster at a meeting of the board of property, "with the drafts and field work of the Conemaugh surveys," to "have directions how the returns are to be made," and whether by George Woods, the letter stating, "I desire that you will keep all the papers of your work in your own hands till I assist you in applying the warrants;" that thenceforth and until after the return of surveys in November, 1808, Thomas Vickroy, in respect to these Conemaugh warrants, surveys, and lands, was the agent, first, of Dr. William Smith, and then, upon his death, the agent of Charles Smith, executor of Dr. William Smith; that on January 18, 1808, Charles Smith addressed a letter to Thomas Vickroy, containing this instruction: "The surveys in Nicholson partnership ought to be completed and returned. This must be done by O'Keeffe, who will, under your direction, apply them properly to the warrants;" and this letter, in speaking of a proposed division of the partnership lands, named, among others, the aforementioned Brannan, Smith, Duncan, and Nicholson tracts; that on April 6, 1808, Charles Smith addressed a letter to Thomas Vickroy, informing him that a division of the partnership lands had been made, and stating, "I have been entirely guided by your opinion and advice in the division of the lands as marked in the red dotted lines in your draft," and further stating, "Below I shall give you a complete list of all the partnership warrants, and the division of them, and shall most earnestly request a speedy survey and return of them,"—the subjoined list of "partnership warrants" including the Smith and Nicholson of December 21, 1792, and the Brannan and Duncan of March 25, 1794; that the said Brannan and Smith

warrants fell to the legal representatives of William Smith, D. D., and the said Nicholson and Duncan warrants to the estate of John Nicholson; that in a paper in the handwriting of Thomas Vickroy, obtained from the wife of a great-grandson of Dr. William Smith, and having this heading, "Memorandum of expenses and costs and taxes paid on partnership land of William Smith, D. D., and John Nicholson, Esq., on Conemaugh, in Cambria county, by Thomas Vickroy," there is the following item: "1808, June and July. To surveying and finding hands and provisions, £35. 6. 0."; and that the returns of 30 surveys purporting to have been made by George Woods, Jr., deputy surveyor, in 1794, and examined by William O'Keeffe on certain days in June and July, 1808, and which, in the division of the said partnership lands, went to the legal representatives of Dr. William Smith (including the Isaac Brannan), are in the handwriting of Thomas Vickroy, except the signature William O'Keeffe. In connection with the documentary proofs, there was the evidence of lines actually run and marked upon the ground in the year 1808. Evidence was produced of marks of 1808 on the line running north from the more western of the two cedar stumps, the one claimed by the defendants as the remains of the Brannan cedar.

There was, we think, ample evidence in the case to justify the finding that the work of 1808 upon the ground was done before the return of the surveys, by the authority of the owners of the warrants, for the purpose of completing and definitely fixing the location thereof. As we have seen, Charles Smith, in his letter of January 18, 1808, to Thomas Vickroy, significantly said. "The surveys in Nicholson partnership ought to be completed and returned." And in his letter to Vickroy of April 6, 1808, speaking of the "partnership warrants" and the division of them, he urged "a speedy survey and return of them."

The plaintiff in error, we think, has no good reason to complain of the instructions of the trial judge in respect to the effect which the jury might give to the marks of 1808. The jury were instructed that the survey of the Brannan tract in 1794 by George Woods, Jr., was conclusively evidenced by the return, and could not be gainsaid, and that the marks of 1794, if found, were controlling. Among other like instructions in the charge, the judge said:

"Such survey of 1808, if you find it, would not control or change any such line of 1794 if the line is found."

The court unqualifiedly affirmed the plaintiff's fifth point, which reads:

"(5) The position of the eastern line of the Isaac Brannan tract is the matter in dispute. If the preponderance of the evidence which the jury deem credible satisfies them that the line was run in June, 1794, by George Woods, Jr., deputy surveyor, north from the cedar near the beech corner of the William Smith, D. D., their verdict should be for the plaintiff without further inquiry upon the question of boundary."

And in the general charge the jury were distinctly told that the marks of 1808 were not to prevail as against those of 1794, if the latter were found, but that, in the absence of marks of 1794, the marks of 1808, if made before the return of survey, and by the au-

thority of the legal representative of Dr. William Smith, deceased, might be considered by the jury in determining the true location. Certainly, in these instructions, the court kept well within the established rule in Pennsylvania governing the location of surveys. It is the settled law of the state that, although a warrant has been surveyed, yet the deputy surveyor, if the warrant is unreturned, and still in his hands, may change the lines of the survey with the consent of the warrantee, if such alteration does not interfere with mesne rights. Mining Co. v. Auten, 188 Pa. St. 568, 582, 41 Atl. 327.

In view of Thomas Vickroy's relation as an assistant to George Woods, Jr., the deputy surveyor, his connection with the field work done in the year 1794 under the Smith-Nicholson warrants, his relations to Dr. William Smith and the latter's executor, Charles Smith, and the reference in Charles Smith's letter of April 6, 1808, to Vickroy's draft, we think that the old draft (with the red dotted lines upon it), in the handwriting of Thomas Vickroy, was clearly admissible in evidence upon the question of the location of the eastern line of the Brannan tract. Sweigart v. Richards, 8 Pa. St. 436; McCausland v. Fleming, 63 Pa. St. 36, 38. Now, this old Vickroy draft shows the cedar corner of the Isaac Brannan tract to be 44 perches west of the beech corner of the William Smith, D. D., tract.

In answer to the plaintiff's first and second points, and also in its general charge, the court gave proper instructions to the jury upon the subject of original marks and existing monuments, and calls for adjoining surveys, as fixing the location of a survey. Complaint, however, is made to the refusal of the court to affirm the plaintiff's sixth, sixteenth, and seventeenth points, which related to the calls for adjoiners by the Isaac Brannan, William Smith, D. D., and John Nicholson surveys, respectively. As we have seen, the two former surveys were returned into the land office on November 28, 1808, and the latter survey on June 26, 1811. The three points just mentioned ignored altogether the marks of 1808 and the evidence relating thereto. They also ignored marks of 1811, found on the John Nicholson, the location of which tract, the defendants claimed, was not completed until the latter year. The sixth point, after reciting the calls of the Brannan and Nicholson surveys, concluded in these words:

"In the absence of marks of 1794 elsewhere, fairly corresponding with the returns, these several calls necessarily tie the Nicholson and the Smith together, and determine that the cedar of the Brannan is the cedar of the Nicholson near the beech corner of the Smith, the position of which is undisputed, and, consequently, that the eastern line of the Brannan is a line running north from the cedar near the beech."

The sixteenth and seventeenth points were to the like effect. We are of opinion that the plaintiff was not entitled to the affirmance of these points, or any of them. They asked for practically binding instructions upon the disputed question of location. That question, however, under the evidence here, was not one of law, but one of fact. Undoubtedly, the calls for adjoiners were to be taken into consideration by the jury, but in connection with the other pertinent evidence bearing on the question of location. These points wholly

excluded from consideration the other evidence, and, in effect, asked the court to declare as matter of law that the calls were conclusive. Moreover, it is to be observed that the Brannan does not call for the Smith, neither does the Smith call for the Brannan. Apparently, they are two wholly disconnected surveys. Then again, the Brannan calls for a cedar, while the Smith calls for a beech, at the alleged point of meeting. These calls were for living corners in surveys, made about the same time, and by the same surveyor. Vickroy's old draft, which was here pertinent evidence, puts these two corners 44 perches apart. Still further, the Nicholson survey does not call for a beech, which was the only living corner of the Smith survey, but for a cedar near a beech. In view of these differing calls, how could the court declare as matter of law that these three surveys have a common corner at or near the Smith beech? Clearly, the question of the location of the eastern line of the Isaac Brannan tract was to be determined by the jury, and with reference to all the evidence on the subject. The court therefore rightly refused to affirm the plaintiff's sixth, sixteenth, and seventeenth points. The facts upon which these points were based the court referred to the jury. No question of fact was withdrawn from them. In so far as the judge intimated or expressed any opinion upon matters of fact, he kept strictly within the approved practice which permits the trial judge, at his discretion, whenever he thinks it necessary to assist the jury in reaching a just conclusion, to express his opinion upon the facts, when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury. Railroad Co. v. Putnam, 118 U. S. 545, 553, 7 Sup. Ct. 1, 30 L. Ed. 257.

The eleventh, sixteenth, and twenty-third assignments of error relate to portions of the charge touching the acts and declarations of Dr. David T. Storm, who, with George S. King, purchased the Brannan tract from Dr. Smith's estate in 1843, and owned it for many years. There was evidence to show that in 1859, during his ownership, Dr. Storm went along the line running north from the more western cedar—the boundary line claimed by the defendants—for the purpose of seeing whether any timber had been cut on his land, and directed the person who accompanied him to keep people from cutting the timber on his land; that he went on the land with a surveyor, Thomas McConnell, and ran off a piece containing 52 acres by the line claimed by the defendants, and that on July 9, 1860, he and King conveyed to Frank Grimes this 52-acre piece by a deed which bounded it by that line, and that in 1862 or 1863 he stated that "the cedar was the corner of his tract,—the cedar where McConnell ran the line." It was with reference to this evidence— not simply the oral declarations of Dr. Storm, but his acts, and the calls contained in his deed to Grimes—that the judge spoke in the portions of his charge complained of. We do not think that he went too far when he said that they were "weighty matters of evidence," to be considered by the jury in determining the true boundary line, if it could not be fixed by marks of 1794, and that they were "strong evidence" of where the then owners of the property regarded

98 F.—36

their line to be. Not only was Dr. Storm the plaintiff's predecessor in the title, but the plaintiff took title also from Frank Grimes' vendee. In Kennedy v. Lubold, 88 Pa. St. 246, 257, a recognition of boundary in proceedings in partition and in deeds under which a party held title was declared by Chief Justice Agnew to be "strong evidence" against him. Upon a careful examination of this entire record, we have reached the conclusion that none of the assignments of error should be sustained. The judgment of the circuit court is affirmed.